Argued and submitted January 16, reversed March 17, 1980

BROWN,
*Petitioner,*
*v.*
ADULT AND FAMILY SERVICES DIVISION, et al,
*Respondents.*
(No. 2-7-MYL186-4, CA 14507)

608 P2d 197

Amy Veranth, Portland, argued the cause and filed the briefs for petitioner.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, C.J.*

JOSEPH, P. J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

**JOSEPH, P.J.**

This is a review of an order of the Adult and Family Services Division (AFS) declaring petitioner liable for an overpayment of Aid to Dependent Children (ADC) made to her for the use of her niece and nephew. Petitioner contends that she should not be held personally liable because she has no legal obligation to support the children and acted only as their fiduciary payee in accepting and disbursing ADC benefits solely for the childrens' needs.

Petitioner was notified that the children's ADC benefits would be reduced because AFS had adopted a different method of calculating their needs. Petitioner requested a hearing on behalf of the children, believing that the proposed reduction was unlawful. She was told that, pending an order, she could either accept reduced benefits on behalf of the children (and be awarded a retroactive payment if she prevailed) or continue to receive unreduced benefits and risk liability for overpayment if the decision was not in the children's favor. Petitioner chose to receive the unreduced benefits, which were spent entirely for the childrens' needs.

A hearing was held, and the order upheld the agency's reduction of ADC benefits. Petitioner was then billed for the overpayment.[1] She requested a hearing, contending that, although the children might be liable for the overpayment, she was not. A second hearing was held, and petitioner was found liable. It is that order that is now reviewed.

There was no basis in the statutes or the regulations upon which to base AFS's claim for reimbursement from petitioner. We are cited to OAR 461-07-250 for a definition of "overpyament":

> "An overpayment is any medical or non-medical, cash, or vendor Public Assistance payment to or on

---

[1] According to the findings made by the agency, petitioner's husband was serving with her in the same capacity. Liability for reimbursement was asserted only against petitioner.

behalf of an individual in any amount exceeding that to which he is entitled or for which he is eligible, regardless of whether ineligibility results from receipt of income or resources in excess of need or from inability to meet any other factor of eligibility."

OAR 461-07-270 provides in part:

"The Adult and Family Services Division shall recover from an applicant or recipient the amount of any *overpayment as defined in 461-07-250* ***."

When we look at the statutory authority upon which these regualtions are based, ORS 411.105[2] and ORS 411.630,[3] it is as plain as can be that neither furnishes

---

[2] ORS 411.105:

"(1) At the time of making application every person applying for public assistance shall declare to the Adult and Family Services Division any circumstance which directly affects the eligibility to receive assistance or the amount of assistance available to him. Upon the receipt of property or income or upon any other change in circumstances which directly affects the eligibility of the recipient to receive assistance or the amount of assistance available to him, the applicant, recipient or other person in the assistance household shall immediately notify the Adult and Family Services Division of the receipt of possession of such property or income, or other change in circumstances. The division shall recover from the recipient the amount of assistance improperly disbursed by reason of failure to comply with the provision of this section.

"(2) The division may recover any general or public assistance which has been paid to any recipient when that recipient is presently receiving or subsequently receives supplemental security income. The amount of recovery shall be limited to the total amount of supplemental security income that was received for the same time period that the general or public assistance was being paid.

"(3) Nothing in subsection (1) or (2) of this section shall be construed as to prevent the division from entering into a compromise agreement for recovery of assistance improperly disbursed, if the division determines that the administration and collection costs involved would exceed the amount that can reasonably be expected to be recovered."

[3] ORS 411.630:

"(1) No person shall knowingly obtain or attempt to obtain, for the benefit of himself or of any other person, any public assistance, as defined in ORS 411.010, to which he or such other person is not entitled under state law by means of:

"(a) Any false representation or fraudulent device, or

any support for a duty to be imposed on petitioner to reimburse AFS. The state asserts no other basis for recovery. The order must be set aside. ORS 183.482(8)(a).[4]

Reversed.

---

"(b) Failure to immediately notify the Adult and Family Services Division of the receipt or possession of property or income, or of any other change of circumstances, which directly affects the eligibility for, or the amount of, such assistance.

"(2) No person shall transfer, conceal or dispose of any money or property with the intent:

"(a) To enable him to meet or appear to meet any requirement of eligibility prescribed by state law or by rule or regulation promulgated by the division for a grant or an increase in a grant of any type of general assistance or public assistance, as defined in ORS 411.010; or

"(b) Except as to a conveyance by such person to create a tenancy by the entirety, to hinder or prevent the division from recovering any part of any claim which it may have against him or his estate.

"(3) No person shall knowingly aid or abet any person to violate any provision of this section.

"(4) No person shall receive, possess or conceal any money or property of an applicant for or recipient of any type of general assistance or public assistance, as defined in ORS 411.010, with the intent to enable such applicant or recipient to meet or appear to meet any requirement of eligibility referred to in paragraph (a) of subsection (2) of this section or, except as to a conveyance by such applicant or recipient to create a tenancy by the entirety, with the intent to hinder or prevent the division from recovering any part of any claim which it may have against such applicant or recipient or his estate."

[4] A curious feature is found in the AFS manual in the provisions dealing with *its* responsibility where it serves as a "representative payee" under the Federal Supplemental Security Income program:

"If branch office staff suspect that SSI is making an overpayment, SSI should be informed of the problem in writing. No action should be taken to return money to SSI until SSI confirms the overpayment in writing ***. AFS cannot return money to SSI if the excess payment has been made to the recipient or on his behalf. For example: AFS receives a full SSI standard payment and forwards that amount to a vendor on behalf of the recipient. It is later determined by SSI that a 1/3 reduction should apply during that pay period. The total amount had been disbursed on behalf of the recipient and AFS had received no benefit from the incorrect payment. Therefore, no money would be returned by AFS to SSI." AFS Manual 11-XI-G(7).

We will resist drawing any analogies between gooses and ganders at this point.